DECISION
{¶ 1} Relator, Reliable Castings Corporation, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its August 19, 2004 order denying relator's request for reconsideration of the commission's order granting permanent total disability ("PTD") compensation to respondent Leonard McIntosh ("claimant") and to vacate the commission's June 28, 2004 order which set April 23, 2003 as the start date for claimant's PTD compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that there was some evidence to support the commission's determination that claimant was precluded from any gainful employment due to the allowed conditions as well as a number of nonmedical factors. In essence, the magistrate determined that relator failed to demonstrate that the commission abused its discretion in awarding PTD compensation given the claimant's severely restricted ability to perform any type of sedentary work due to the allowed conditions, coupled with nonmedical factors that prevented claimant from performing any sustained remunerative employment. Therefore, the magistrate has recommended that the requested writ of mandamus be denied. No objections have been filed to the magistrate's decision.
 {¶ 3} Following an independent review of this matter, we find no error or other defect on the face of the magistrate's decision. Therefore, we adopt that decision as our own pursuant to Civ.R. 53, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Writ of mandamus denied.
Bryant and Petree, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Reliable Castings :
Corporation, : Nos. 04AP-1298
 Relator, and : 04AP-1299
 :
v. :
 :
Leonard McIntosh and Industrial : (REGULAR CALENDAR)
Commission of Ohio, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on May 23, 2005 Graydon Head Ritchey LLP, and Amy E. Lippert, for relator.
Mark A. Ferestad, for respondent Leonard McIntosh.
Jim Petro, Attorney General, and Dennis Behm, for respondent Industrial Commission of Ohio.
IN MANDAMUS
 {¶ 4} Relator, Reliable Castings Corporation, has filed these original actions requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its August 19, 2004 order denying relator's request for reconsideration of its order granting permanent total disability ("PTD") compensation to respondent Leonard McIntosh ("claimant") and to vacate the commission's June 28, 2004 order which set the start date for claimant's PTD compensation as April 23, 2003.
 {¶ 5} Relator requests a writ of mandamus ordering the commission to either deny claimant's application for PTD compensation outright or to redetermine the start date for the award of PTD compensation.
Findings of Fact:
 {¶ 6} 1. Claimant sustained a work-related injury on April 4, 2000 and his claim was allowed for: "fracture right femur, neck; rotator cuff tear of the right shoulder."
 {¶ 7} 2. Claimant did not return to work after the surgery and was paid temporary total disability compensation until January 14, 2001, at which time a district hearing officer ("DHO") found that he had reached maximum medical improvement.
 {¶ 8} 3. On July 23, 2003, claimant filed the instant application for PTD compensation. Claimant was 59 years old when he sustained his injuries and 62 years old when he filed the application for PTD compensation. Claimant indicated that he had completed the eighth grade and quit school to go to work. Claimant has not obtained a GED, nor has he attended trade or vocational school. Claimant indicated that he could read and write, but could not perform math well.
 {¶ 9} 4. Claimant's application was supported by the April 23, 2003 report of James T. Bilbo, M.D., who stated as follows in his report:
As of my last evaluation of Mr. McIntosh in July 2002, he was having increasing symptoms and difficulty ambulating with an antalgic gait pattern. I do feel as of that exam that he has significant limitations. He is limited with standing, walking, prolonged sitting, significant lifting, pushing, and pulling activities. I feel he would be limited, at best, to a very sedentary form of work which would need to be primarily sit down and fine manipulative with his upper extremities. My understanding is that he has always done heavy work as a laborer and does not have education that would qualify him easily for this type of limited work and if that is the case, his hip problems would preclude him from any type of gainful employment.
 {¶ 10} 5. Claimant was examined by James T. Lutz, M.D., who issued a report dated October 7, 2003. After noting his physical findings, Dr. Lutz assessed a 17 percent whole person impairment and opined that claimant could perform sedentary work provided that it was no overhead work with his right upper extremity.
 {¶ 11} 6. The record also contains a vocational assessment dated July 7, 2003 prepared by William T. Cody, who opined that claimant was permanently, totally and occupationally disabled as he could not be expected to adequately adapt to the new tools, tasks, procedures, and rules involved in performing a new type of work activity, even work activities that are unskilled in nature.
 {¶ 12} 7. An employability assessment was prepared by Deborah Lee dated November 5, 2003. Based upon the report of Dr. Bilbo, Ms. Lee opined that claimant was not employable. Based upon the report of Dr. Lutz, Ms. Lee opined that relator could perform the following job: "Assembler/Fabricators (selective placement)." Ms. Lee indicated that, at age 63, claimant's age could begin to impact on the functional demands of work activity, that his eighth grade education was adequate for simple work related reading tasks, but not if reading and writing are essential work tasks, that his work history of unskilled labor provides him with no transferable skills to sedentary work, and that his ability to adapt to sedentary work deserves consideration. Further, Ms. Lee noted that Dr. Bilbo limited claimant to very sedentary work and only fine finger manipulation. She opined that men have difficulty performing fine manipulation type of work at a competitive level.
 {¶ 13} 8. Claimant's application for PTD compensation was heard before a staff hearing officer ("SHO") on February 19, 2004, and resulted in an order granting the requested compensation. The SHO relied upon the medical reports of Drs. Bilbo and Lutz and concluded that claimant was limited to the performance of less than a full range of sedentary employment activities. The SHO also relied upon the vocational report completed by Ms. Lee. The SHO also provided the following independent analysis of the nonmedical disability factors:
The Staff Hearing Officer finds that the injured worker is 63 years of age with an eighth grade education and a work history which involves employment only as a laborer. The Staff Hearing Officer further finds that the injured worker never obtained a GED and never received any additional vocational training. The Staff Hearing Officer further finds that the injured worker is able to read well but is not able to spell or perform basic arithmetic well.
The Staff Hearing Officer finds that the injured worker's age of 63 years is a moderate barrier to the injured worker with regard to his ability to return to and compete in the work force. The Staff Hearing Officer further finds, however, that age taken alone is never the determining factor in deciding the issue of permanent and total disability. The Staff Hearing Officer further finds that the injured worker's limited education and limited academic skills would be barriers to the injured worker with regard to his ability to return to and compete in the work force. The Staff Hearing Officer further finds that these same factors would be barriers to the injured worker with regard to his ability to learn the new work rules, work skills and work procedures necessary to perform some other type of employment. The Staff Hearing Officer further finds, based upon the reports of Dr. Lutz and Dr. Bilbo, that the industrial injury so severely restricts the injured worker's functional capacity as to limit him to the performance of less than a full range of sedentary employment activities. The Staff Hearing Officer further finds that the injured worker's work history has not provided the injured worker with any skills that are transferable to the performance of sedentary work. The Staff Hearing Officer further finds that the injured worker was at the time that he last worked beyond the traditional age for participating in rehabilitation programs. The Staff Hearing Officer further finds, based upon the report of Ms. Lee, that it is not reasonable to believe that the injured worker can reasonably acquire the skills to perform entry level sedentary jobs through skill enhancement or formal training. Based upon the injured worker's age of 63 years, limited education, limited academic skills, lack of transferable skills, lack of ability to acquire the skills to perform entry level sedentary and light jobs, and severe physical restrictions, the Staff Hearing Officer finds that the injured worker is not able to perform sustained remunerative employment. The Staff Hearing Officer therefore finds that the injured worker is permanently and totally disabled. The application for permanent and total disability, filed 07/25/2003, is therefore granted.
The SHO determined that compensation be awarded beginning April 23, 2003.
 {¶ 14} 9. On April 5, 2004, relator filed a motion requesting an adjustment in the start date for the award of PTD compensation and argued that there was no supporting medical evidence that claimant was permanently and totally disabled beginning April 23, 2003. Relator's request was denied as follows:
The Staff Hearing Officer rejects the employer's allegation and finds that the medical report of Dr. Bilbo dated 04/23/2003 constitutes medical evidence of the injured worker's permanent and total disability as a result of the allowed conditions in the claim. Therefore, the employer's motion is denied.
 {¶ 15} 10. Relator's request for reconsideration from the commission's order granting claimant's application for PTD compensation was denied by order of the commission mailed September 3, 2004.
 {¶ 16} 11. Thereafter, relator filed the instant mandamus actions in this court.
Conclusions of Law:
 {¶ 17} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 18} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 19} Relator makes two arguments in these mandamus actions: (1) the commission abused its discretion by granting claimant's application for PTD compensation; and (2) the commission abused its discretion by beginning the award of PTD compensation upon a medical report which does not state that the claimant is permanently and totally disabled. For the reasons that follow, this magistrate disagrees.
 {¶ 20} In its first argument, relator argues that the commission abused its discretion by not considering claimant's ability to perform unskilled sedentary work. Relator points to that portion of the commission's order wherein the SHO noted as follows in its analysis of the vocational report of Ms. Lee: "[T]he injured worker's work history has not provided the injured worker with transferable skills to the performance of sedentary work." First, the magistrate finds that the SHO was merely reiterating the vocational findings of Ms. Lee. Second, as indicated previously, the SHO provided an independent analysis of the nonmedical disability factors. Specifically, the SHO noted that claimant's age would be a moderate barrier regarding his ability to return to and compete in the workforce. Further, the SHO found that claimant's limited education and limited academic skills would also be barriers regarding his ability to return to and compete in the workforce. The SHO noted that these same factors would be barriers to claimant regarding his ability to learn the new work rules, work skills, and work procedures necessary to perform some other type of employment. Furthermore, the SHO noted that claimant's functional capacity was so severely restricted as to limit him to less than a full range of sedentary activities and that his work history did not provide him with any skills that would be transferable to the performance of sedentary work. Furthermore, the SHO concluded that it was not reasonable to believe that claimant could acquire the skills necessary to perform entry level sedentary jobs.
 {¶ 21} Relator challenges the commission's analysis because of its failure to specifically indicate that claimant was not suited to even unskilled sedentary work. However, upon review of the commission's order and the vocational report of Ms. Lee, the magistrate notes that Ms. Lee indicated that claimant would have difficulty with fine manipulation and that this would impact his ability to perform assembly type jobs. Furthermore, the commission noted that, given his age, education, and past work history, claimant would have difficulty adjusting to new work rules, work skills, and work procedures. These three areas relate not only to entry level skilled sedentary work, but, also, to entry level unskilled work as well. The magistrate finds that the commission's omission of the word "unskilled" is not fatal given the fact that the commission explained how claimant's age, education, and work history were all three barriers to claimant's reemployment.
 {¶ 22} Relator also challenges the commission's determination to begin the payment of PTD compensation as of April 23, 2003, based upon the report of Dr. Bilbo. Relator asserts that, in that report, Dr. Bilbo did not make a finding that claimant was permanently and totally disabled. Relator cites this court's decision in State ex rel. Johns ManvilleInternatl., Inc. v. Indus. Comm., Franklin App. No. 02AP-957, 2003-Ohio-5808, for the proposition that if evidence relied upon is fatally equivocal, then that evidence may not be relied upon to determine the start date for compensation. In Johns Manville, the commission relied upon the June 13, 1989 report of Dr. Ward to retroactively award PTD compensation to the claimant for the past 14 years. The court, through its magistrate, determined that the report of Dr. Ward was equivocal and could not be considered "some evidence" pursuant to State ex rel.Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649. The magistrate noted the following reasons: (1) at the time the alleged PTD application was filed in 1989, claimant had not yet reached maximum medical improvement; (2) in 1994, the claimant filed an application for permanent partial disability which demonstrates that she was not aware that she had filed a PTD application in 1989 which was still pending; (3) in 1994, the commission found that claimant had a 15 percent permanent partial disability and that this 1994 order precludes a subsequent finding in 2001 that claimant was permanently and totally disabled from 1989 through 1994 based upon the same conditions in the same claim; (4) regardless of the fact that the alleged PTD applications were submitted on a C-84 form signed by Dr. Ward, it was not a PTD application as it did not include the information normally included on a PTD application, nor was it signed by the claimant; and (5) further, the report of Dr. Ward was fatally equivocal as Dr. Ward based disability on nonallowed conditions.
 {¶ 23} In the present case, the commission awarded PTD compensation as of April 23, 2003 based upon the report by Dr. Bilbo of the same date. In that report, Dr. Bilbo stated as follows:
As of my last evaluation of Mr. McIntosh in July 2002, he was having increasing symptoms and difficulty ambulating with an antalgic gait pattern. I do feel as of that exam that he has significant limitations. He is limited with standing, walking, prolonged sitting, significant lifting, pushing, and pulling activities. I feel he would be limited, at best, to a very sedentary form of work which would need to be primarily sit down and fine manipulative with his upper extremities. My understanding is that he has always done heavy work as a laborer and does not have education that would qualify him easily for this type of limited work and if that is the case, his hip problems would preclude him from any type of gainful employment.
 {¶ 24} Contrary to relator's assertions, Dr. Bilbo's report is not equivocal. Unlike the doctor's report in Johns Manville, Dr. Bilbo did not base his opinion on nonallowed conditions. Instead, Dr. Bilbo based his opinion on the allowed conditions and noted that the claimant has restrictions relative to standing, walking, prolonged sitting, significant lifting, pushing and pulling activities. Dr. Bilbo opined that claimant would be limited, at best, to a very sedentary form of work. Dr. Bilbo went on to say that, given claimant's work history and education, he would be precluded from any gainful employment. While it is improper for Dr. Bilbo to base his ultimate conclusion upon consideration of the nonmedical disability factors as those factors are solely within the purview of the commission, this report of Dr. Bilbo does constitute "some evidence" that claimant is restricted to very sedentary work. Mentioning nonmedical factors by a doctor does not automatically preclude the commission from relying upon that decision where the commission can separate the medical findings in the report from the vocational findings. The magistrate finds that Dr. Bilbo's medical findings were separate and independent from his vocational findings. Further, the commission relied on his report to find claimant capable of less than sedentary work and not that he was permanently and totally disabled based solely on the medical evidence. As such, it is "some evidence" upon which the commission could rely in awarding PTD compensation in light of the fact that the commission relied upon that report to find that, from aphysical standpoint, claimant retains the ability to perform less than a full range of sedentary employment activities.
 {¶ 25} Based on the foregoing, it is the magistrate's decision that relator has not demonstrated that the commission abused its discretion in awarding PTD compensation to claimant and, further, that the commission did not abuse its discretion in using the April 23, 2003 report of Dr. Bilbo as the start date for the award of PTD compensation. Accordingly, relator's request for a writs of mandamus should be denied.